# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **DONALD CALHOUN**, | § | |
| | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | **NOTICE OF APPEAL** |
| v. | § | **District Court Case No. 4:19-cv-03171** |
| | § | |
| **JACK DOHENY COMPANIES, INC.**, | § | |
| | § | |
| *Defendant/Counter-Plaintiff.* | § | |

Notice is hereby given that Defendant/Counter-Plaintiff Jack Doheny Companies, Inc. hereby appeals to the United States Court of Appeals for the Fifth Circuit from the above-named District Court's Memorandum Opinion and Order entered in this action on the 15th day of January, 2020 and attached hereto as **Exhibit 1**, by which the District Court denied Jack Doheny Companies, Inc.'s Motion for Preliminary Injunction.

Respectfully submitted,

/s/ *R.J. Cronkhite*
R.J. Cronkhite (P78374)
Dinsmore & Shohl LLP
900 Wilshire Dr., Suite 300
Troy, Michigan 48084
*Attorneys for Jack Doheny Companies*
(734) 558-5809
rj.cronkhite@dinsmore.com

Dated: February 13, 2020

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2020, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system and that a copy was electronically served on all counsel of record via the ECF system, and to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. mail.

/s/ *R. J. Cronkhite*
R.J. Cronkhite (P78374)

03173343 v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DONALD CALHOUN,** | § | |
| | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | **INDEX OF EXHIBITS** |
| v. | § | **District Court Case No. 4:19-cv-03171** |
| | § | |
| **JACK DOHENY COMPANIES, INC.,** | § | |
| | § | |
| *Defendant/Counter-Plaintiff.* | § | |

| Exhibit # | Description |
|---|---|
| 1 | Memorandum and Opinion Dated January 15, 2020 |

03173343 v1

*Donald Calhoun v. Jack Doheny Companies, Inc., et al.*
*United States District Court – Southern District of Texas – Houston Division Case No.: 19-cv-03171*

Defendant's Notice of Appeal 2/13/2020

# *Exhibit 1*

United States District Court
Southern District of Texas
**ENTERED**
January 16, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD CALHOUN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-3171 |
| | § | |
| JACK DOHENY COMPANIES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion for a preliminary injunction filed by the defendant/counter-plaintiff, Jack Doheny Companies, Inc. ("JDC"). The Court held an evidentiary hearing on the motion on November 25, 2019 (Dkt. 25) and has reviewed the parties' written submissions (Dkt. 9; Dkt. 14; Dkt. 15) and the other filings in the case. JDC's motion (Dkt. 9) is **DENIED**.

### I.    BACKGROUND

This case is rooted in a covenant not to compete that was included in an employment agreement ("the agreement") between JDC and the plaintiff/counter-defendant, Donald Calhoun ("Calhoun"). Calhoun worked for JDC for nine years and left after they demoted him from the position of Southern Regional Manager to the position of Regional Sales Representative and cut his salary from $185,000.00 a year to $65,000.00 a year (Dkt. 14-1; Dkt. 14-2). After Calhoun began working for a new company, Custom Truck & Equipment, LLC d/b/a Custom Truck One Source ("Custom Truck"), JDC sent him a cease-and-desist letter threatening a lawsuit based on the

1 / 13

Case 4:19-cv-03121   Document 12   Filed on 02/15/2020 in TXSD   Page 29 of 34

agreement (Dkt. 9-2 at pp. 89–90). Calhoun then filed a declaratory judgment action in state court seeking a declaration that the covenant not to compete is unenforceable (Dkt. 1-1). JDC removed the case to this Court and filed counterclaims against Calhoun for breach of the agreement; violations of the Texas Uniform Trade Secrets Act; tortious interference with existing contracts; tortious interference with existing and prospective business relationships; conversion; and unjust enrichment (Dkt. 7).

JDC then filed a motion seeking a preliminary injunction whereby: (1) Calhoun would be forced to leave Custom Truck and would be further "enjoined from being employed with, or providing services to, any individual, company, or entity that sells, rents, or repairs new, used, and remanufactured industrial utility vehicles . . . within North America"; and (2) Calhoun would be "enjoined from directly or indirectly attempting to persuade, entice, induce, or otherwise cause any customer of [JDC] to reduce the amount of business those customers do with [JDC]" (Dkt. 9-3). JDC based its request for this injunction on a covenant not to compete in the agreement that reads:

> Employee shall not perform, in North America, service for, become engaged by, or aid, assist, own, operate or have any financial interest in a company that is in the Business at any time during or within two (2) years after termination of employment.
> Dkt. 9-2 at p. 11.

The agreement defines "the Business" as "selling, servicing and renting various industrial utility vehicles, including, but not limited to, street sweepers, petroleum, waste hauling, hydro-excavating, sewer trucks and other specialty commercial vehicles and all related parts and services" (Dkt. 9-2 at p. 10).

The agreement also includes a liquidated damages clause that reads:

> In view of the difficulty of evaluating the value of Employer's confidential information and materials, the Employee agrees to pay Employer Liquidated Damages for each such violation. Liquidated Damage shall be three (3) times Employee's annual compensation. The parties agree that this sum shall include Employer's cost for developing said information, materials, products and markets, as well as Employer's resulting revenue losses and is not a penalty.
> Dkt. 9-2 at p. 12.

The Court held an evidentiary hearing on JDC's motion. JDC argued in its filings and at the hearing that the covenant not to compete "is reasonable and enforceable as drafted" and that it is entitled to preliminary injunctive relief because "there is direct evidence that Calhoun has solicited multiple JDC customers for Industrial Utility Vehicle Services" (Dkt. 9-1 at pp. 17, 20). In support, JDC pointed to evidence showing that Calhoun and the regional operations manager of a company called ROC Service Company, LLC ("ROC") emailed each other about a pending equipment lease application. In the email exchange, Calhoun asked the ROC representative to fill out a credit application, and the ROC representative said that he was waiting on a certificate of liability insurance (Dkt. 9-2 at pp. 19–20). According to JDC, "[t]hat email reveals that Calhoun—on behalf of Custom Truck and in his role as Custom Truck's Regional Sales Manager—directly solicited JDC's customer for the same services provided by JDC" (Dkt. 9-1 at pp. 7–8).

In response, Calhoun testified in an affidavit that ROC began doing business with Custom Truck in 2011, long before Calhoun began working at Custom Truck (Dkt. 14-2). JDC did not refute Calhoun's testimony that ROC and Custom Truck had a longstanding business relationship. JDC's other evidence consisted of a 38-page printout of Calhoun's

3 / 13

Case 4:19-cv-03512    Document 412    Filed on 02/14/2020 in TXSD    Page 450 of 134

LinkedIn contacts (Dkt. 9-2 at pp. 36–74). Given the chance to make a general proffer to supplement the emails and the LinkedIn page, JDC's counsel said that he could call as a witness an employee of JDC who "spoke with the general manager of Ag & Oil, which is a customer of [JDC]," and could testify that the general manager of Ag & Oil said that Calhoun went to Ag & Oil's offices and offered Ag & Oil pricing on hydro-excavators.[1] In his own general proffer, Calhoun's counsel said that Calhoun could testify that Custom Truck's "roster of not only prospects but business in progress shows that Custom Truck did business with many, if not all, of [JDC's] customers even preceding [Calhoun's] tenure[,] so the relationships were there before [Calhoun] got there."[2] JDC did not refute Calhoun's counsel's proffer that Custom Truck had business relationships with "many, if not all," of JDC's customers before Calhoun began working for Custom Truck.

## II.    THE LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). In the Fifth Circuit, the following well-established framework generally governs the determination of whether to grant a preliminary injunction:

> To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary

---

[1] *See* recording of preliminary injunction hearing at 12:12 p.m.–12:13 p.m.
[2] *See* recording of preliminary injunction hearing at 12:17 p.m.

Case 4:19-cv-03121    Document 412    Filed on 02/13/2020 in TXSD    Page 5 of 134

remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements. Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.[3]
*Id*.

The requirements for obtaining a preliminary injunction are stringent in all cases, but "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Justin Industries, Inc. v. Choctaw Securities, L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990) ("And because Sutherland is seeking a mandatory injunction, it bears the burden of showing a clear entitlement to the relief under the facts and the law."); *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 441 F2d 560, 561 (5th Cir. 1971) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.") (quotation marks omitted); *Roark v. Individuals of Federal Bureau of Prisons, Former and Current*, 558 Fed. App'x 471, 472 (5th Cir. 2014).

In presiding over a preliminary injunction hearing, a district court may "give even inadmissible evidence some weight when it is thought advisable to do so in order to serve

---

[3] Neither party argues that this four-factor framework conflicts with Texas law. Since the Court has found no authority indicating that such a conflict exists, the Court will apply all four factors in deciding this motion. *Cf. Brock Services, L.L.C. v. Rogillio*, 936 F.3d 290, 296, 299–300 (5th Cir. 2019) (discussing only factors one, three, and four because, "[u]nder Louisiana law governing restrictive covenants, the party seeking the preliminary injunction need not show irreparable injury but only that the employee failed to perform under the contract").

Case 4:19-cv-03517 Document 412 Filed on 02/15/25 in TXSD Page 9 of 134

the primary purpose of preventing irreparable harm before a trial can be held[.]" *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2949 at 471). In particular, "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *Dixon*, 835 F.2d at 558 (quoting *Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986)).

### III.   ANALYSIS

The injunction sought by JDC does not maintain the status quo and is instead mandatory in nature, as it would require Calhoun to quit his job at Custom Truck (Dkt. 9-2 at pp. 2–3). Even if the Court gives due weight to JDC's mostly inadmissible evidence, JDC has fallen far short of showing its entitlement to a preliminary injunction, much less showing its entitlement to mandatory preliminary relief.

#### a.   Likelihood of success on the merits

JDC has not clearly shown a substantial likelihood of success on the merits. To begin with, the covenant not to compete that forms the basis of JDC's request for relief is, as written, patently unenforceable. The covenant seeks to bar Calhoun from doing any job for any company in North America that sells, services, or rents "various industrial utility vehicles . . . and all related parts and services" for two years after Calhoun's departure from JDC (Dkt. 9-2 at p. 10). The covenant is, in other words, an attempt to

6 / 13

Case 4:19-cv-03947    Document 612    Filed on 02/15/20 in TXSD    Page 73 of 134

impose an impermissible industry-wide exclusion on Calhoun and, on the current record, cannot even be reliably reformed. Additionally, there is no credible evidence in the record showing that Calhoun has initiated contact with any of his former JDC customers that did not also have business relationships with Custom Truck predating Calhoun's employment at Custom Truck.

"Under Texas law, covenants not to compete that extend to clients with whom the employee had no dealings during her employment or amount to industry-wide exclusions are overbroad and unreasonable." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 211–12 (5th Cir. 2018) (brackets and quotation marks omitted). Under Section 15.50 of the Texas Business and Commerce Code, a covenant not to compete must contain time, scope, and geography limitations that are reasonable and that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer. *Id*. "In the case of personal services occupations, such as salespersons, the employer has the burden of establishing that covenants not to compete meet the requirements of § 15.50[,]" *D'Onofrio*, 888 F.3d at 211–12, and a court may award the employee "costs, including reasonable attorney's fees," in a breach-of-contract action if the employer "sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the [employer.]" Tex. Bus. & Com. Code 15.51(c). Section 15.51 of the Texas Business and Commerce Code requires courts to reform unreasonable covenants not to compete. *D'Onofrio*, 888 F.3d at 211–12. But a court may not award damages and may only award injunctive relief for breaches that occurred prior to reformation. Tex. Bus. & Com. Code § 15.51(c).

7 / 13

Case 4:19-cv-03417-L   Document 54-2   Filed on 02/15/20 in TXSD   Page 99 of 134

There is virtually no evidence in the record clarifying how much customer contact Calhoun had while he was working for JDC, when he had it, and with whom he had it. Notably, the agreement, which Calhoun signed while he held the position of Southern Regional Manager with JDC, explicitly bars the solicitation of JDC employees but does not contain a clause explicitly barring the solicitation of JDC customers (Dkt. 9-2 at pp. 10–15; Dkt. 14-1). That rather curious drafting decision raises an important point: the agreement cannot even be reformed at present into a simple ban on solicitation of JDC customers. Reformation of the agreement will not be possible until, at a minimum, the Court knows exactly what Calhoun did and which JDC clients Calhoun dealt with while he worked at JDC. *See, e.g., Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298–99 (Tex. App.—Beaumont 2004, no pet.) (cited in *D'Onofrio*) (remanding to the trial court for reformation when the record was unclear as to who the former employee's customers were so that the reformed covenants would "limit the prohibitions just to customers with whom [the employee] had dealings while he was employed by [the employer]").

For instance, the offer letter outlining the responsibilities of the Southern Regional Manager makes the position sound like one that involved far more personnel management than sales. The Southern Regional Manager does not "receive salesman commission[;]" "interact[s] regularly with employees and managers in other departments and locations at [JDC;]" and "must give direction to others" (Dkt. 14-1 at pp. 4–5). Calhoun was demoted from Southern Regional Manager to a role that was clearly more sales-oriented, but he left JDC three months after the demotion (Dkt. 14-1 at p. 9; Dkt.

8 / 13

14-2). In any event, even if Calhoun had frequent customer contact during his entire tenure at JDC, the covenant is still unenforceable, and its reformation still impossible, based on the information in this record; there is no evidence whatsoever showing that Calhoun had dealings with every customer of JDC. *Id.* ("[A] covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable."). At its broadest, Calhoun's geographical reach covered Texas, Oklahoma, New Mexico, Arkansas, Louisiana, and Mississippi, and Calhoun testified in his affidavit that his actual business dealings were considerably more limited geographically—80% in Texas and "[p]erhaps 20 per cent" in New Mexico and Oklahoma (Dkt. 14-1 at p. 4; Dkt. 14-2 at p. 2). Calhoun's reach did not come close to the territory that JDC claims to cover: JDC's president describes JDC as "a multi-national company operating throughout North America" (Dkt. 9-2 at p. 5).

Even if the agreement could be reformed at this point, there is no credible evidence in the record showing that Calhoun has initiated contact with any of his former JDC customers that did not also have business relationships with Custom Truck predating Calhoun's employment at Custom Truck. Calhoun's counsel stated in his general proffer that Calhoun could testify that Custom Truck had business relationships with "many, if not all," of JDC's customers before Calhoun began working for Custom Truck, a claim that JDC did not refute. Calhoun provided uncontroverted testimony in his affidavit that ROC began doing business with Custom Truck in 2011, long before Calhoun began working at Custom Truck. Moreover, JDC did not present any evidence that Calhoun had business dealings with ROC while he was working at JDC. Mindful that it can consider

hearsay testimony, the Court will consider JDC's counsel's proffer that a JDC employee could testify that the general manager of Ag & Oil said that Calhoun went to Ag & Oil's offices and offered Ag & Oil pricing on hydro-excavators. But that evidence is equally weak. There is no evidence that Calhoun initiated the contact with Ag & Oil; there is no evidence that Calhoun had business dealings with Ag & Oil while he was working at JDC; and there is no evidence that Ag & Oil's business relationship with Custom Truck, if there was one, began after Calhoun joined Custom Truck. In short, there is no credible evidence showing that Calhoun has breached even a hypothetical, enforceable reformed agreement. JDC has not met its burden of persuasion on this factor.

### b. Threat of irreparable injury

JDC has also failed to show a substantial threat of irreparable injury. "The extraordinary equitable remedy of an injunction requires that the [movant] demonstrate that, without injunctive relief, he will suffer an irreparable injury for which damages are an inadequate remedy." *Jones v. American Council on Exercise*, 245 F. Supp. 3d 853, 867 (S.D. Tex. 2017) (quotation marks omitted) (J. Miller). "[T]he injury at issue must be actual and imminent, not speculative or remote." *Allied Home Mortgage Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011) (J. Harmon). "Irreparable injury may be shown where a business 'would suffer a substantial loss of business and perhaps even bankruptcy' absent injunctive relief." *Id*. at 228 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)).

JDC has not presented any evidence showing that Calhoun's employment with Custom Truck poses an actual and imminent threat of irreparable injury to JDC. There is

Case 4:19-cv-02017 Document 42 Filed on 02/13/20 in TXSD Page 14 of 134

no evidence in the record showing that JDC could suffer "a substantial loss of business and perhaps even bankruptcy" if Calhoun is allowed to continue working at Custom Truck. To the contrary, JDC's position that Calhoun now poses an existential threat to JDC is belied by the fact that JDC demoted Calhoun and cut his pay by two-thirds three months before Calhoun left for Custom Truck. Furthermore, JDC's ability to persuasively argue that damages are an inadequate remedy for Calhoun's alleged breach of the agreement is undercut by the existence of a liquidated damages clause stating that "[t]he parties agree that this sum [of liquidated damages] shall include [JDC's] cost for developing said information, materials, products and markets, as well as [JDC's] resulting revenue losses and is not a penalty" (Dkt. 9-2 at p. 12). JDC has not met its burden of persuasion on this factor.

### c. Relative weight of threatened harm

JDC has failed to show that the threat of harm faced by JDC if its motion for a preliminary injunction is denied outweighs the threat of harm faced by Calhoun if JDC's motion for a preliminary injunction is granted. Again, JDC has not presented any evidence showing that Calhoun's employment with Custom Truck poses an actual and imminent threat of irreparable injury to JDC. On the other hand, Calhoun will suffer catastrophic harm if JDC's motion is granted; he will have to quit his job and forgo working at any job for any company in North America that sells, services, or rents

11 / 13

Case 4:19-cv-03412   Document 42   Filed on 02/13/20 in TXSD   Page 12 of 13

"industrial utility vehicles . . . and all related parts and services" for an indeterminate period of time (Dkt. 9-2 at p. 2).[4] JDC has not met its burden of persuasion on this factor.

### d. The public interest

JDC has failed to show that granting its motion for a preliminary injunction will not disserve the public interest. In the context of covenants not to compete, this factor is closely tied to the enforceability of the covenant, as "[a] covenant not to compete is a restraint of trade and unenforceable as a matter of public policy unless it meets a reasonableness standard." *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Here, JDC seeks a mandatory preliminary injunction implementing a covenant not to compete that is overbroad, unreasonable, and, on this evidentiary record, impossible to reform. To enter such an injunction would disserve the public interest. JDC has not met its burden of persuasion on this factor.

---

[4] Despite the two-year limitation on the covenant not to compete and the liquidated damages clause, JDC's motion does not provide a starting or ending date for the requested mandatory preliminary injunction and instead seeks an injunction lasting for the pendency of this lawsuit. In other words, JDC's motion, if granted, would enable JDC to impose a complete bar on Calhoun's employment in the relevant industry in all of North America for a longer period of time than even the agreement itself would have, simply by filing this lawsuit.

## IV.    CONCLUSION

JDC's motion for a preliminary injunction (Dkt. 9) is **DENIED**.

SIGNED this day 15th day of January, 2020.

_____

George C. Hanks Jr.
United States District Judge